UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MIRACLE METCALF,<br><br>                Plaintiff,<br>   v.<br><br>TRA-MINW PS dba TRA MEDICAL IMAGING, et al.,<br><br>                Defendants. | CASE NO. 3:24-CV-5288-DWC<br><br>ORDER GRANTING MOTION TO DISMISS |

Currently before the Court is Defendant TRA-MINW PS's Motion to Dismiss, which has been joined by Defendant TRA-MINW JV LLC. Dkts. 8, 19.[1] After review of the relevant record, the Court concludes Plaintiff Miracle Metcalf has not stated a claim upon which relief can be granted. Accordingly, Defendants' Motion to Dismiss (Dkt. 8) is granted.

**I.  Background**

On April 15, 2024, Metcalf filed this lawsuit alleging TRA-MINW PS denied her services because she would not wear a face mask, violating the Americans with Disabilities Act

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 11.

("ADA"), the Rehabilitation Act of 1973 ("§ 504"), and the Washington Law Against Discrimination ("WLAD"). Dkt. 1. Metcalf also alleges a state law outrage claim. *Id*. On August 1, 2024, Defendant TRA-MINW PS filed the Motion to Dismiss. Dkt. 8. Defendant TRA-MINW JV LLC joined the Motion to Dismiss on August 20, 2024. Dkt. 18. On September 17, 2024, Defendants filed a reply, noting Metcalf had not responded to the Motion to Dismiss. Dkt. 20. Metcalf filed an untimely response later that same day. Dkts. 21, 23. Because Metcalf is proceeding *pro se*, the Court determined it would consider her untimely response and gave Defendants an opportunity to file a supplemental reply. *See* Dkt. 24. Defendants filed the supplemental reply on September 30, 2024. Dkt. 25.

## II. Surreply

On October 2, 2024, Metcalf filed a surreply. Dkt. 26. This is not a proper filing and the Court declines to consider it. Pursuant to Local Rule Civil Rule 7(g), surreplies are limited to requests to strike material contained in or attached to a reply brief. "Extraneous argument or a surreply filed for any other reason will not be considered." *Id*; *see also Herrnandez v. Stryker Corp.*, 2015 WL 11714363, at *2 (W.D. Wash. Mar. 13, 2015). Plaintiff does not request to strike material contained in Defendants' supplemental reply; rather, she provides additional argument. *See* Dkt. 26. Therefore, the Court directs the Clerk to strike Plaintiff's surreply (Dkt. 26). The Court will not consider Docket Entry 26 in ruling on Defendants' Motion to Dismiss.

## III. Legal Standard

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the Court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most

favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). To survive a motion to dismiss, a plaintiff must merely cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). Although the Court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007).

### IV.  Discussion

In the Motion to Dismiss, Defendants assert Metcalf's claims should be dismissed because she has failed to state a claim upon which relief can be granted. Dkts. 8, 19.

#### A.  *Factual Background*

Taking the facts alleged in the Complaint as true, Metcalf arrived at TRA Medical Imaging[2] in Gig, Harbor, Washington on April 20, 2021, for an ultrasound. Dkt. 1 at ¶ 6. A TRA employee performed an initial COVID-19 screening and Metcalf answered "no" to every question. *Id*. The employee provided Metcalf with a mask to wear and Metcalf responded that she could not wear a mask due to a medical condition. *Id*. at ¶ 7. Metcalf suffers from post-traumatic stress disorder ("PTSD"). *Id*. at ¶ 8. The employee notified Metcalf that she could have a face shield. *Id*. at ¶ 7. Metcalf attempted to wear the face shield, but the band of the face shield was constricting and difficult to put on due to Metcalf's prescription glasses and the effects of PTSD. *Id*. at ¶ 8. Metcalf put the face shield on upside down. *Id*. at ¶ 9.

---

[2] For clarity, the Court will refer to TRA Medical Imaging, TRA-MINW PS and TRA-MINW JV simply as "TRA," unless otherwise noted.

ORDER GRANTING MOTION TO DISMISS - 3

A TRA employee confronted Metcalf and told her she needed to wear the face shield so it wrapped around her forehead. *Id*. Metcalf responded that she could not place it around her head due to a medical condition. *Id*. Metcalf states that the employee continued to badger Metcalf to wear the face shield around her forehead. *Id*. at ¶ 10. Metcalf explained to the employee that she has PTSD and wearing the face shield around her forehead would cause an anxiety attack and interfere with her prescription glasses. *Id*. at ¶¶ 10-11. Metcalf stated she was wearing the face shield in a manner that covered her nose and mouth. *Id*. at ¶ 11.

Metcalf states the employee continued the "verbal assault," causing Metcalf's heart to pound and the feeling of an imminent anxiety attack. *Id*. at ¶ 12. The employee told Metcalf she could wear the face shield high on her forehead. *Id*. Metcalf, shaking and sobbing, again said she could not due to her PTSD. *Id*. At that point, the employee directed Metcalf to leave. *Id*. Metcalf "ripped off the face shield and quickly left the building, sobbing and shaking." *Id*. at ¶ 13.

Metcalf's husband then called TRA and an employee on the phone denied the incident occurred. *Id*. Metcalf states the employee stated, however, that she would deny Metcalf services because of her disability. *Id*. Three days later, a TRA employee contacted Metcalf's husband and offered to make Metcalf an appointment at another TRA location where Metcalf could have the procedure done without wearing a mask. *Id*. at ¶ 14. The alternative location was an hour away and over a toll bridge; Metcalf declined because of the severe emotional distress already caused by TRA. *Id*.

B.  *Standing*

Defendants first assert Metcalf's ADA claim fails because Metcalf lacks standing. Dkt. 8 at 5. In the Complaint, Metcalf raises a claim under Title III of the ADA. Dkt. 1. Title III of the ADA prohibits discrimination against disabled individuals in any place of public

ORDER GRANTING MOTION TO DISMISS - 4

1  accommodation. 42 U.S.C. § 12182. "No individual shall be discriminated against on the basis of
2  disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,
3  or accommodations of any place of public accommodation ...." 42 U.S.C. § 12182(a). "Under
4  Title III of the ADA (public accommodations and services operated by private entities), equitable
5  relief in the form of an injunction is the only remedy available to private parties. *Washington v.*
6  *Salinas Valley State Prison*, 2023 WL 2588179, at *3 (N.D. Cal. Mar. 20, 2023).

7  Because Title III contemplates only injunctive relief, a plaintiff must "establish a
8  sufficient future injury by alleging that they are either currently deterred from visiting the place
9  of public accommodation because of a barrier, or that they were previously deterred and that they
10 intend to return to the place of public accommodation, where they are likely to reencounter the
11 barrier. *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (citing *Chapman v. Pier 1 Imports*
12 *(U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011)). To determine whether a plaintiff's likelihood of
13 returning to a place of public accommodation is sufficient to confer standing, courts examine
14 factors such as "(1) the proximity of defendant's business to plaintiff's residence, (2) plaintiff's
15 past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and
16 (4) the plaintiff's frequency of travel near defendant." *Johnson v. Overlook at Blue Ravine, LLC*,
17 2012 WL 2993890, at *3 (E.D. Cal. 2012) (collecting cases).

18 Here, Metcalf does not provide any allegations to sufficiently allege a future injury. *See*
19 Dkt. 1. She now lives in Texas; thus, Metcalf's residence is not close in proximity to TRA
20 locations. Further, Metcalf does not allege she currently deterred from visiting TRA because of
21 the alleged barrier. While she states that she did not accept an alternative accommodation,
22 Metcalf has not stated she has any intention of returning to TRA, she does not travel near TRA
23 locations, and she received the medical procedure – an ultrasound -- at a different location on
24

ORDER GRANTING MOTION TO DISMISS - 5

April 28, 2021. *See* Dkt. 1 at ¶ 15. The Court also notes Metcalf does not allege TRA continues to require masking now that mask mandates have been lifted. As Metcalf has not shown sufficient future injury, she lacks standing to bring an ADA claim. *See Grechko v. Calistoga Spa, Inc.*, 2022 WL 298571, at *5 (N.D. Cal. Feb. 1, 2022) (finding the plaintiffs did not demonstrate a likelihood of repeated injury as required to establish standing under Title III of the ADA).

C. *Failure to State an ADA, § 504, or WLAD Claim*

Defendants also allege Metcalf has failed to state a claim under the ADA, § 504, and WLAD. Dkt. 8.

To prevail on her ADA claim, Metcalf must show that "(1) [she is] disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) [she] was denied public accommodations by the defendant because of [her] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). A defendant discriminates based on the plaintiff's disability by "(a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Mora v. Burn & Plastic Hand Clinic*, 2023 WL 7128855, at *3 (W.D. Wash. Oct. 30, 2023); *see Townsend v. Quasim,* 328 F.3d 511, 518 (9th Cir. 2003) ("As the regulatory language makes clear, entities are required only to make *reasonable* changes in existing policies in order to accommodate individuals' disabilities." (emphasis in original)).

To establish a claim under § 504 (the Rehabilitation Act), Metcalf must show: (1) she is a qualified individual with a disability; (2) she was denied a reasonable accommodation that she needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial funding. *Csutoras v. Paradise High School*, 12 F.4th 960, 968 (9th Cir. 2021). Additionally, because Metcalf is a private plaintiff seeking

monetary damages, she must prove a "*mens rea* of intentional discrimination in the failure to accommodate, which may be met by showing deliberate indifference." *Id*. at 969 (cleaned up). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (internal quotations omitted)).

"To make out a prima facie case under the WLAD for discrimination in the public accommodations context, the plaintiff must establish four elements: (1) that the plaintiff is a member of a protected class; (2) that the defendant is a place of public accommodation; (3) that the defendant discriminated against the plaintiff, whether directly or indirectly; and (4) that the discrimination occurred 'because of' the plaintiff's status or, in other words, that the protected status was a substantial factor causing the discrimination." *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469, 501–02, 441 P.3d 1203, 1220 (2019) (cleaned up).

The allegations show TRA directed Metcalf to wear to face mask because of the mask mandate and the Covid-19 pandemic. Metcalf declined because of a "medical condition." TRA offered Metcalf an accommodation for the face mask – a face shield. Metcalf again stated she could not wear the face shield because of a medical condition, eventually telling the TRA employee she had PTSD. After declining to wear the face mask and declining the accommodation – wearing a face shield correctly --, Metcalf was told TRA could not provide her with services that day. Three days later, TRA called Metcalf and provided an additional accommodation. TRA offered to reschedule Metcalf for an appointment where she could be maskless. This alternative appointment was located an hour from Metcalf and required Metcalf to drive over a toll bridge. Looking at the allegations in the Complaint, Metcalf has alleged TRA provided her with two different accommodations. While Metcalf declined the accommodations,

ORDER GRANTING MOTION TO DISMISS - 7

she fails to allege facts showing she was denied a reasonable accommodation or that TRA intentionally discriminated against Metcalf because of her disability.

Additionally, the ADA explicitly states that "[n]othing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3). "The ADA's direct threat provision stems from the recognition ... of the importance of prohibiting discrimination against individuals with disabilities while protecting others from significant health and safety risks, resulting, for instance, from a contagious disease." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). "'In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence.'" *Chadam v. Palo Alto Unified Sch. Dist.*, 666 F. App'x 615, 617 (9th Cir. 2016) (quoting 28 C.F.R. § 35.139); *see also Ewers v. Columbia Medical Clinic*, 2023 WL 5629796, at *6 (D. Oregon, Aug. 31, 2023). The direct-threat defense also applies to § 504 and a similar provision is contained in the WLAD. *See id*. (analyzing district court's application of the "direct threat" defense in both an ADA and § 504 claim); *Felix v. Wisconsin Dep't of Transportation*, 828 F.3d 560, 569 (7th Cir. 2016) (noting the direct-threat defense has been incorporated into the Rehabilitation Act); RCW § 49.60.215.

Defendants assert the ADA claims should be dismissed because TRA found Metcalf's refusal to wear a proper face covering posed a risk to other patients and TRA employees. *See* Dkt. 8. As stated above, the Court recognizes that this threat defense also applies to § 504 and

1    WLAD claims.[3] The Court will therefore analyze whether the ADA, § 504, and WLAD claims

2    should also be dismissed because Metcalf posed a threat to others.

3          Metcalf contends that her disability prevented her from wearing a face mask or the

4    alternative accommodation, a face shield. Dkt. 1. Metcalf was then asked to leave the TRA

5    location. Later, TRA offered Metcalf an (apparently maskless) appointment at a different

6    location. *Id*. Regardless of whether the appointment at a different facility that would not require

7    her to wear a mask was a reasonable accommodation, TRA assessed Metcalf and found her

8    refusal to wear a face covering properly presented a risk of harm to others.

9          The Complaint alleges that, at the time Metcalf refused to properly wear a face covering,

10    Defendants were aware that there was a statewide mask mandate in place requiring everyone,

11    with some exceptions, to wear face coverings in public indoor settings. *See* Dkt. 1. As Metcalf

12    refused to properly wear a face covering, Defendants assessed that Metcalf's desire to be treated

13    unmasked (or improperly masked) posed a direct threat to other patients and employees.

14    Therefore, Defendants have shown the "direct threat" defense applies to Metcalf's discrimination

15    claims. *See Ewers*, 2023 WL 5629796 at *6 (granting motion to dismiss and finding the

16    defendants showed the direct threat defense applied when a patient refused to wear a mask

17    during Covid-19 when a mask mandate was in effect); *Doscher v. Timberland Regional Library*,

18    2022 WL 1766907, *6 (W.D. Wash., Dec. 14, 2022) (granting summary judgment where the

19    defendant showed direct threat defense applied because defendant made an individualized

20    assessment that a patron who entered the library without a mask during the pandemic posed a

---

[3] While Defendants did not clearly articulate that the § 504 and WLAD claims should be dismissed based on the threat defense, the Court finds the Motion to Dismiss puts Metcalf on notice of this argument and she was provided with opportunity to respond, but did not.

ORDER GRANTING MOTION TO DISMISS - 9

direct threat to the health and safety of others). Accordingly, Defendants have shown the direct threat defense applies to Metcalf's ADA, § 504, and WLAD claims.

For all the above stated reasons, the Motion is granted as to Metcalf's discrimination claims under the ADA, § 504, and WLAD.

### D.  *Outrage*

Finally, Defendants assert Metcalf's outrage claim must be dismissed for failure to state a claim. Dkt. 8. The elements of the tort of outrage (also known as intentional infliction of emotional distress) are (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) the claimant actually suffers severe emotional distress. *Kloepfel v. Bokor*, 149 Wash.2d 192, 195 (2003). "The conduct must be such that the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!' " *Lemelson v. Wells Fargo Bank, N.A.*, 2022 WL 4774282, at *3 (W.D. Wash. Oct. 3, 2022) (quoting *Kloepfel*, 66 P.3d at 632 (internal quotations omitted). "The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Saldivar*, 145 Wash. App. at 390. "[T]he tort of outrage does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities because the law expects plaintiffs to be hardened to a certain degree of rough language, unkindness and lack of consideration." *Lemelson*, 2022 WL 4774282 at * 3 (cleaned up).

Here, Metcalf alleges that she went to a medical appointment and was asked to wear a face mask when a mask mandate was in effect. Dkt. 1. Metcalf refused the face mask because of a medical condition. She then refused to correctly wear a face shield because of her medical condition. She alleges the TRA employee verbally assaulted her; however, the allegations show that the employee merely continually asked Metcalf to wear the face covering correctly. *See id*.

ORDER GRANTING MOTION TO DISMISS - 10

1 | When Metcalf refused, the employee stated that Metcalf could not be in the office. *Id*. at ¶ 12.
2 | Metcalf then left.
3 |       These facts do no give rise to conduct that is so outrageous or extreme as to "as to go
4 | beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in
5 | a civilized community." *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975). Continually
6 | asking Metcalf to wear the face shield correctly and then telling her that she could not be at TRA
7 | during the Covid-19 pandemic is not enough to plausibly allege that TRA's employee's conduct
8 | met the threshold required to state an outrage claim. Accordingly, the Motion is granted as to
9 | Metcalf's outrage claim.

## V.    Conclusion

For the above stated reasons, Defendants' Motion to Dismiss (Dkt. 8) is granted. The Court finds leave to amend is not appropriate in this case because it is improbable Metcalf can cure the deficiencies of her Complaint. Therefore, the Complaint is dismissed and this case is closed.

Dated this 3rd day of October, 2024.

*[signature]*

David W. Christel
United States Magistrate Judge